# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **JONATHAN BOBNAR,**<br>112 Lauren Road<br>Chagrin Falls, OH 44022,<br><br>**Plaintiff,**<br><br>vs.<br><br>**ASTRAZENECA PHARMACEUTICALS LP,**<br>1800 Concord Pike<br>Wilmington, DE 19803,<br><br>**c/o its statutory agent**<br>CT Corporation System<br>4400 Easton Commons Way, Suite 125<br>Columbus, Ohio 43219<br><br>**Defendant.** | CASE NO. _____<br><br>JUDGE _____<br><br><br><br>**COMPLAINT**<br><br>**(JURY DEMAND ENDORSED HEREON)** |

Plaintiff, Jonathan Bobnar ("Bobnar" or "Plaintiff"), by and through his undersigned counsel, for his Complaint against Defendant, AstraZeneca Pharmaceuticals LP ("AstraZeneca" or "Defendant"), for violations of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 USC § 2000e, et seq., the Family Medical Leave Act ("FMLA"), 29 U.S. Code § 2601, et seq., and the Ohio Civil Rights Statute, Chapter 4112 of the Ohio Revised Code, and for breach of contract and failure to pay wages in violation of R.C. 4113.15, and states as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff is and was at all times relevant to this action a resident of Chagrin Falls, Ohio, who was employed with Defendant for over 8 years.

2. Plaintiff is a "person" and "employee" as those terms are defined in Chapter 4112 of the Ohio Revised Code, Title VII, and the FMLA, as well as an "eligible employee," "spouse," and a "parent" of a "son or daughter," as those terms are defined in the FMLA.

3. AstraZeneca Pharmaceuticals LP is and was at all relevant times a Delaware for-profit corporation, with its principal place of business in Delaware. Defendant conducts business throughout the United States and in the state of Ohio.

4. Defendant is, and was at all times relevant herein, an "employer," as that term is defined in Chapter 4112 of the Ohio Revised Code, Title VII and the FMLA.

5. The conduct, injuries and damages that gave rise to Plaintiff's claims herein occurred in Cuyahoga County, Ohio.

6. Plaintiff's damages exceed $75,000.

7. Venue and jurisdiction are proper in this Court.

8. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1332, 1343, 1367, 42 U.S.C. § 2000e-5 (f)(3), and 29 U.S. Code § 2617(A)(2).

9. All jurisdictional prerequisites and administrative exhaustion requirements have been met under Chapter 4112 of the Ohio Revised Code and Title VII, and this case is timely brought with all claims properly before this Court.

10. Within 300 days of the conduct alleged herein, Bobnar filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2022-03339 against AstraZeneca.

11. On September 28, 2022, the EEOC issued a Dismissal and Notice of Rights letter to Bobnar, a true and accurate copy of which is attached hereto as **Exhibit 1**.

12. This Complaint is timely filed on or before the filing deadline(s) set forth in the Dismissal and Notice of Rights and/or under Chapter 4112 of the Ohio Revised Code, Title VII and the FMLA, and Plaintiff has exhausted all administrative remedies pursuant to Chapter 4112 of the Ohio Revised Code and Title VII.

## FACTUAL BACKGROUND

13. Plaintiff restates, reasserts, and re-alleges the foregoing statements, assertions, and allegations as if fully rewritten herein.

14. Plaintiff was and is a devout Christian and guided by the Holy Spirit in prayer to not take the COVID-19 vaccines.

15. Consistent with his religious beliefs and biblical teachings, Plaintiff sincerely believes that receiving a COVID-19 vaccine, derived from aborted fetal stem cell lines would violate his conscience and religious faith and the desire to maintain his body as a temple for the Holy Spirit.

16. AstraZeneca employed Plaintiff for over 8 years until his wrongful termination on April 29, 2022.

17. At the time of his unlawful termination without cause, Plaintiff held the position of Field Sales Representative.

18. At all times relevant to this Complaint, Plaintiff worked both remotely from his home and in-person when visiting customers, and during the pandemic, he abided by all social distancing requirements and mandates imposed by state and local governments and his employer.

19. At all times relevant to this Complaint, Plaintiff was qualified for the positions that he held while employed with AstraZeneca and successfully performed the duties and

responsibilities for those positions, resulting in several promotions and performance awards during his tenure.

20. In August 2021, Defendant announced it would require all employees to disclose their COVID-19 vaccination status. The company required that unvaccinated employees explain their reasons for declining vaccination, submit to weekly testing and wear masks at work. However, unvaccinated employees who had recently been infected with COVID-19 were exempted from these testing and masking requirements.

21. In December 2021, in response to AstraZeneca's vendors purportedly requiring vaccination for their respective employees, AstraZeneca issued a formal letter explaining that AstraZeneca employees were not required by law to adhere to the vaccination policies of the company's clients or vendors.

22. Throughout the entire pandemic, Plaintiff was never limited in his job duties due to his unvaccinated status and none of his customers demand that he provide proof of COVID-19 vaccination or restrict his entry into a facility due to his vaccine status.

23. Despite the foregoing, on or about January 31, 2022, AstraZeneca imposed a COVID-19 vaccine mandate for its U.S. based employees, subject to religious or medical exemptions, provided those requests were received by February 28, 2022.

24. Defendant's vaccine policy stated: "[f]or employees who are not vaccinated and who are granted an exemption to the vaccine requirement for qualifying reasons, the primary accommodation will remain weekly COVID-19 PCR testing. This is required for those entering any AstraZeneca US site or operating in any field-based role."

25. Under the policy, employees had to be vaccinated by March 31, 2022, unless an exemption was granted.

26. On February 15, 2022, Defendant issued a religious exemption form to its employees via email and indicated the form was due by February 28, 2022. The request form impermissibly required employees seeking a religious exemption to respond to questions about how long they had possessed their religious beliefs, their denomination and place of worship, their medical histories, and sought documented proof of past religious exemptions to other vaccination requirements.

27. On February 28, 2022, Plaintiff submitted a request for religious accommodation to AstraZeneca using the company's request form and asking to be exempt from its mandatory vaccination policy due to a conflict with his sincerely held religious beliefs.

28. Specifically, Plaintiff conveyed he had a deep and sincerely held religious objection to each of the then available COVID-19 vaccines because his Christian faith requires him to follow the guidance of the Holy Spirit, and through prayer, the Holy Spirit instructed Plaintiff to not receive the COVID-19 vaccine. To ignore the guidance of the Holy Spirit would force Plaintiff to violate his sincerely held religious beliefs.

29. AstraZeneca questioned the sincerity of Plaintiff's religious beliefs without an objective or legitimate basis to do so and required him to respond to further intrusive and inappropriate questions before considering his request for religious accommodation.

30. Specifically, Defendant asked Plaintiff: "*Your request mentions that you cannot get vaccinated because of your belief that your body is a temple and you are prohibited from putting harmful substances into your body. To help us understand your religious beliefs better, can you confirm whether, for the period you have held these religious beliefs, you have smoked cigarettes, consumed alcohol, received any tattoos or used any legal recreational drugs? If yes, please*

*describe why these activities do not violate your religious belief that your body should not be subjected to anything that would harm it.*"

31. Notably, nothing in Plaintiff's request mentioned putting "harmful substances" in his body. This mismatch indicated Plaintiff's exemption request was not reviewed on an individualized or case-by-case basis as required by law.

32. Rather upon, information and belief, Defendant relied on a formulaic template to ask general or standardized questions of each employee seeking a religious accommodation from its vaccination mandate, regardless of the individual bases for those requests, contrary to EEOC guidance.

33. Defendant acted in bad faith and its inquiries into the sincerity of Plaintiff's religious beliefs were not individualized and were unreasonable and contrary to law.

34. EEOC guidance is clear that an employee's newly adopted or inconsistently observed practices may nevertheless be sincerely held. Further, according to the EEOC, an employer should not assume that an employee is insincere simply because some of the employee's practices deviate from the commonly followed tenets of the employee's religion, or because the employee adheres to some common practices but not others. No one factor or consideration is determinative, and employers should evaluate religious objections on an individual basis.

35. On March 31, 2022, Defendant denied Plaintiff's request for a religious exemption from the company's COVID-19 vaccine mandate, stating only that Plaintiff was "not qualified for a reasonable accommodation," and suggesting "undue hardship can include, but is not limited to, business disruption/increased costs resulting from illness-related absences," contrary to its very own policy statement indicating exempted employees would be accommodated by weekly

6

COVID-19 PCR testing. Plaintiff was advised his employment would be formally terminated on April 22, 2022.

36. AstraZeneca's accommodation process was arbitrary, calculated, and lacked individual assessment required by law.

37. For example, AztraZeneca granted the religious exemption requests of Plaintiff's similarly situated coworkers, who, upon information and belief, submitted virtually identical religious exemption requests, based upon similar religious convictions, and in one case, even attended the same church as Plaintiff. There was no legitimate reason for Defendant to deny Plaintiff's religious accommodation request while simultaneously granting others that were substantially the same.

38. On April 7, 2022, Plaintiff sought further clarification regarding the denial of his request for religious accommodation, including whether the company considered his natural immunity and why his request was denied when other employees with the same beliefs were granted exemptions. He also requested information about his health benefits and his Q1 bonus earned between January and March 2022.

39. Meanwhile, on March 14, 2022, Defendant granted Plaintiff's request for paternity leave pursuant to the FMLA commencing with the birth of his son on or about April 13, 2022. Plaintiff was scheduled to return to work on June 8, 2022.

40. During his period of FMLA leave, Defendant harassed and contacted Plaintiff multiple times regarding his request for a religious accommodation when he was on job-protected leave to bond with his newborn and not working.

41. Nevertheless, while he was out on paternity leave, on April 29, 2022, Defendant wrongfully terminated Plaintiff's employment without cause because he was not vaccinated, resulting in his loss of compensation and benefits.

42. Under Plaintiff's compensation package with Defendant, he was scheduled to receive a $38,000 bonus in 2022, including a Q1 bonus of $9,500. Plaintiff was also scheduled to have AstraZeneca stock options valued at $6,108.54 vest in March 2023 and $7,251.78 in March 2024.

43. Shortly after Plaintiff's termination, in May 2022, AstraZeneca eliminated the need for PCR testing for its unvaccinated employees who were granted an exemption from the company's vaccine mandate, instead permitting self-reported antigen testing. Further, Defendant stopped requiring face masks in its offices.

44. Plaintiff suffered discrimination and retaliation due to his sincerely held religious beliefs when his employer failed to accommodate those beliefs and wrongfully terminated his employment. Further, Defendant interfered with Plaintiff's FMLA rights.

45. AstraZeneca was able to accommodate Plaintiff's request for a religious accommodation without undue hardship, including continued telework, testing, and masking, in addition to his reliance on his natural immunity having been previously infected with the COVID-19 virus in December 2021. Indeed, on information and belief, AstraZeneca has accommodated some of its employees in this way, while refusing to accommodate other employees with substantially equivalent job descriptions.

46. Yet, Defendant failed and refused to even consider these accommodations for Plaintiff or to engage in the required interactive accommodation process because the company

illegitimately questioned the sincerity of Plaintiff's religious convictions without an objective basis to do so.

47. Defendant acted in bad faith and did not terminate Plaintiff for any legitimate reason related to his work performance, his alleged lack of adherence to any published company policy or practice, or for just cause.

48. During his employment, Plaintiff was subjected to discriminatory, retaliatory, and disparate treatment as compared to his similarly situated peers based on his religious beliefs.

49. At or around the time of Plaintiff's termination, Defendant had open positions for which Plaintiff was qualified or eligible to receive.

50. Defendant refused to reinstate, rehire, transfer, or reassign Plaintiff to available open positions for which he was qualified because he sought a religious exemption from the company's vaccine policy.

**COUNT ONE**
**(Religious Discrimination / Failure to Accommodate**
**in Violation of Ohio Revised Code Chapter 4112 and Title VII)**

51. Plaintiff restates, reasserts, and re-alleges the foregoing statements, assertions, and allegations as if fully rewritten herein.

52. Plaintiff was qualified for his position and his performance in that position met or exceeded company objectives.

53. Plaintiff holds sincere religious beliefs that preclude him from receiving a COVID-19 vaccine.

54. Plaintiff informed Defendant of those beliefs and requested religious accommodations from the company's vaccine mandate.

55. Defendant failed to engage in good faith in the required interactive process with Plaintiff regarding his request for religious accommodation and instead denied his request and terminated his employment.

56. Defendant failed to provide Plaintiff with reasonable accommodations for his religious beliefs, terminating his employment, and thereby discriminated against him because of his religious beliefs.

57. In terminating Plaintiff's employment, Defendant unlawfully discriminated against Plaintiff because of his religious beliefs and his request for accommodation.

58. Defendant's discrimination, failure to provide religious accommodations, and retaliation, has harmed and will continue to harm Plaintiff.

59. As a direct and proximate result of Defendant's failure to accommodate Plaintiff and its discriminatory actions, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including without limitation, pain and suffering, lost compensation, incentives, bonuses, benefits, and other privileges and conditions of employment.

60. Defendant's conduct constitutes an unlawful discriminatory practice for which they are liable for compensatory damages to Plaintiff under Title VII and applicable state civil rights statutes, including past and future economic and non-economic damages.

61. Defendant's discriminatory and retaliatory actions against Plaintiff were unlawful, intentional, and willful, and undertaken with reckless or malicious indifference to his protected rights and render Defendant liable to Plaintiff for punitive damages, as well as attorney's fees, costs, and any equitable relief that this Court deems appropriate.

## COUNT TWO
### (Religious Discrimination / Retaliation in Violation of Ohio Revised Code Chapter 4112 and Title VII)

62. Plaintiff restates, reasserts, and re-alleges the foregoing statements, assertions, and allegations as if fully rewritten herein.

63. Plaintiff engaged in a protected activity when he requested a religious exemption accommodation from Defendant's vaccination policy.

64. In denying Plaintiff's request for accommodation, Defendant responded that it would terminate his employment if he did not get vaccinated, presenting Plaintiff with the false choice between vaccination in contravention of his sincerely held religious beliefs and conscience or the termination of his employment.

65. Defendant denied Plaintiff's exemption even though Plaintiff possessed superior natural immunity, he could safely continue to perform his job duties remotely and/or subject to applicable social distancing guidelines, and despite him being on FMLA job-protected leave until June 2022.

66. Plaintiff's religious beliefs and protected activity were the causes of Defendant's termination of his employment.

67. Defendant's disparate treatment of religious accommodation requests, in accommodating some but not all religious accommodation requests based on substantially the same faith-based beliefs, confirms its hostility to Plaintiff's request for religious accommodation.

68. Further, Defendant unlawfully withheld and refused to make bonus payments earned, due and owing to Plaintiff before his termination because he had sought a religious accommodation.

69. Specifically, Defendant made payment of Plaintiff's 2021 Q1 bonus, which he worked for and earned, contingent upon Plaintiff first agreeing to voluntarily terminate his employment and sign a release agreement waiving his rights to pursue any claims against Defendant regarding its denial of his requests for religious accommodations and the termination of his employment.

70. Nothing in Defendant's bonus plan terms required similarly situated employees who had not requested religious accommodations to resign and/or waive their rights in order to receive bonus compensation they had earned.

71. Defendant's attempted retroactive, unilateral modification of bonus terms for employees that exercised their Title VII rights and after Plaintiff had already earned his bonus was discriminatory and retaliatory; Defendant took this action because Plaintiff sought a religious accommodation and because Plaintiff opposed religious discrimination by Defendant.

72. By discriminating and retaliating against Plaintiff for engaging in protected activity, including making the payment of Plaintiff's earned bonus on his agreement to resign and sign a release and terminating Plaintiff's employment, Defendant violated Chapter 4112 of the Ohio Revised Code and Title VII, and such violations harmed and continue to harm Plaintiff.

73. Defendant's conduct constitutes unlawful discriminatory and retaliatory practices for which it is liable for damages to Plaintiff, including past and future economic and non-economic damages.

74. Defendant's actions against Plaintiff were unlawful, intentional, and willful, and undertaken with reckless or malicious indifference to his protected rights and render Defendant liable to Plaintiff for and punitive damages, as well as attorney's fees, costs, and any equitable relief that this Court deems appropriate.

## COUNT THREE
**(Violations of the ADA, 42 U.S.C. §§ 12112(d)(1), 12112 (d)(4))**

75. Plaintiff restates, reasserts, and re-alleges the foregoing statements, assertions, and allegations as if fully rewritten herein.

76. The ADA prohibits medical examinations and inquiries unless such examination or inquiry is shown to be job-related and consistent with business necessity.

77. Defendant's inquiries into Plaintiff's COVID-19 vaccination status as well as his past medical history respecting other vaccines and medications was a prohibited medical inquiry and neither job related or consistent with business necessity.

78. Defendant denied Plaintiff's request for religious accommodation, in part, because Plaintiff objected to disclosing his confidential medical history during the accommodation process.

79. As a result of Defendant's actions and its unlawful medical inquiries, Plaintiff suffered tangible injuries, including the loss of his employment, economic losses, non-economic losses, ridicule, shame, and emotional distress.

## COUNT FOUR
## FMLA INTERFERENCE

80. Plaintiff restates, reasserts, and re-alleges the foregoing statements, assertions, and allegations as if fully rewritten herein.

81. Defendant's conduct as described herein restrained, denied, and interfered with Plaintiff's substantive FMLA rights, including by terminating his employment during his job-protected paternity leave.

82. Defendant's interference with Plaintiff's FMLA was willful, wanton, malicious, and in reckless disregard of Plaintiff's rights.

83. Defendant's intentional interference with Plaintiff's FMLA rights proximately caused Plaintiff harm and damages, and Defendant is liable to Plaintiff for past and future compensatory damages, economic losses, lost wages and benefits, back pay, front pay, and liquidated damages, as well as attorney's fees, costs, and any equitable relief that this Court deems appropriate.

### COUNTS FIVE AND SIX
### BREACH OF CONTRACT AND/OR FAILURE TO PAY WAGES IN VIOLATION OF R.C. 4113.15

84. Plaintiff restates, reasserts, and re-alleges the foregoing statements, assertions, and allegations as if fully rewritten herein.

85. Plaintiff and Defendant were parties to one or more agreements concerning the payment of bonus or incentive compensation to Plaintiff based upon objective sales performance criteria.

86. Defendant agreed to pay Plaintiff certain bonus or incentive compensation.

87. For the first quarter of 2021, Plaintiff met his sales performance objectives under the parties' agreement(s) and thereby earned a 2021 Q1 bonus before the termination of his employment with Defendant and which was to be paid in June 2021.

88. However, Defendant changed the terms of the incentive or bonus terms, insisting that to be eligible for his bonus, Plaintiff had to voluntarily resign his employment and execute a release and waiver of claims agreement in favor of Defendant before Defendant would pay Plaintiff the bonus he had already worked for and earned.

89. Plaintiff did not agree to this modification and demanded Defendant pay his 2021 Q1 bonus, but Defendant refused.

90. In breach of the parties' agreement(s), Defendant failed and refused to pay Plaintiff's 2021 Q1 bonus after Defendant wrongfully terminated Plaintiff's employment without cause.

91. Defendant's refusal to pay Plaintiff's Q1 bonus constitutes a breach of contract and/or a violation of R.C. 4113.15, requiring the semimonthly payment of wages, as defined in subsection (D)(1) therein, including "guaranteed pay" such as Plaintiff's 2021 Q1 bonus.

92. By virtue of its breach of contract and/or violations of R.C. 4113.15, Defendant is liable to Plaintiff for compensatory damages and lost wages, as well as liquidated damages pursuant R.C. 4113.15(B) in an amount equal to 6% of Plaintiff's unpaid 2021 Q1 bonus or $200, whichever is greater.

## **PRAYER FOR RELIEF**

Plaintiff, Jonathan Bobnar, seeks an amount in excess of $75,000.00 to fully, fairly, and justly compensate him for his injury, damage, and loss, and respectfully prays that this Court enter judgment in his favor and award him compensatory damages, consequential damages, incidental damages, back pay, front pay, lost benefits, lost stock options, past and future non-economic damages, punitive damages, liquidated damages, pre- and post-judgment interest, all reasonable attorney's fees, witness fees, expert fees, costs, and expenses, and any additional equitable relief that the Court deems appropriate.

Respectfully submitted,

/s/ *Christopher A. Holecek*
Christopher A. Holecek (0040840)
Jay R. Carson (0068526)
WEGMAN HESSLER LPA
6055 Rockside Woods Boulevard, Suite 200
Cleveland, Ohio 44131
Telephone: (216) 642-3342
Facsimile: (216) 642-8826

15

E-Mail: caholecek@wegmanlaw.com
jrcarson@wegmanlaw.com
*Attorneys for Plaintiff, Jonathan Bobnar*

**JURY DEMAND**

Plaintiff hereby demands a trial by Jury on all issues so triable pursuant to FRCP 38(b).

/s/ *Christopher A. Holecek*
Christopher A. Holecek (0040840)
WEGMAN HESSLER
*One of the Attorneys for Plaintiff, Jonathan Bobnar*