## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| JONATHAN BOBNAR, | Case No. 1:22-CV-02258 |
| Plaintiff, | |
| -vs- | JUDGE PAMELA A. BARKER |
| ASTRAZENECA, | MEMORANDUM OPINION AND ORDER |
| Defendant. | |

This matter comes before the Court upon Defendant AstraZeneca's Motion for Partial Dismissal of Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) filed on February 24, 2023. (Doc. No. 11.)  Plaintiff Jonathan Bobnar filed a Brief in Opposition on March 10, 2023 to which AstraZeneca replied on March 24, 2023.   (Doc. Nos. 15, 19.)   For the following reasons, AstraZeneca's Motion is GRANTED.

## I.      Background

### A.      Factual Allegations

Bobnar alleges that he worked for Defendant AstraZeneca for over eight years until AstraZeneca wrongfully terminated him on April 29, 2022.  (Doc. No. 1, ¶¶ 1, 17.)  He alleges that on January 31, 2022, AstraZeneca imposed a COVID-19 vaccine mandate for U.S.-based employees, "subject to religious or medical exemptions, provided those requests were received by February 28, 2022."  (*Id.* at ¶ 23.)  According to the policy, employees were required to be vaccinated by March 31, 2022, unless they received an exemption.  (*Id.* at ¶ 25.)

Bobnar alleges that he was and is a devout Christian and was "guided by the Holy Spirit in prayer to not take the COVID-19 vaccines."  (*Id.* at ¶ 14.)  Bobnar alleges that he "sincerely believes

that receiving a COVID-19 vaccine, derived from aborted fetal stem cell lines[,]  would violate his conscience and religious faith and the desire to maintain his body as a temple for the Holy Spirit." (*Id.* at ¶ 15.)

Bobnar alleges that on February 15, 2022, AstraZeneca sent employees a "religious exemption form" via e-mail and indicated that the form was due by February 28, 2022.  (*Id.* at ¶ 26.) On February 28, 2022, Bobnar submitted his request for religious accommodation to AstraZeneca, using its request form.  (*Id.* at ¶ 27; *see also* Doc. Nos. 11-2, 15-1.)  Bobnar asked to be exempt from AstraZeneca's mandatory vaccination policy "due to a conflict with his sincerely held religious beliefs," specifically that "his Christian faith requires him to follow the guidance of the Holy Spirit, and through prayer, the Holy Spirit instructed [Bobnar] to not receive the COVID-19 vaccine."  (*Id.* at ¶ 28.)  Bobnar alleges that "[t]o ignore the guidance of the Holy Spirit would force [Bobnar] to violate his sincerely held religious beliefs."  (*Id.*)

Bobnar alleges that AstraZeneca "questioned the sincerity" of his religious beliefs and required Bobnar to respond to "intrusive and inappropriate questions before considering his request for religious accommodation."  (*Id.* at ¶ 29.)  Specifically, AstraZeneca asked Bobnar to "[p]lease explain how the religious belief that prevents you from receiving the COVID-19 vaccine affects other areas of your life.  For example, have you received other vaccines in the past?"[1]  (*See* Doc. No. 15-1.)

---

[1] The Court notes that Bobnar does not quote the specific question from AstraZeneca's exemption form in his Complaint or otherwise identify this question as the basis for his ADA claim.  However, Bobnar argues in his Opposition that AstraZeneca "[s]pecifically" questioned the sincerity of his religious beliefs by asking this question, and that this question is a prohibited inquiry under the ADA.  (Doc. No. 15, PageID# 87, 89-95.)  In ruling on a Rule 12(b)(6) motion, a court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat. Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) ; *see also Brent v. Wayne Cty. Dep't of Human Servs.*, 901 F.3d 656, 694 (6th Cir. 2018).  AstraZeneca attached Bobnar's Religious Reasonable Accommodation Request Form to its Motion.  (*See* Doc. No. 11-2.)  Bobnar referenced this form throughout

On March 31, 2022, AstraZeneca denied Bobnar's request for a religious exemption from its COVID-19 vaccine mandate.  (*Id.* at ¶ 35.)  On April 7, 2022, Bobnar sought further clarification regarding the denial of his accommodation request.  (*Id.* at ¶ 38.)  Bobnar alleges that AstraZeneca wrongfully terminated his employment on April 29, 2022.  (*Id.* at ¶ 41.)

### B.  Procedural History

Bobnar filed this case on December 15, 2022.  (Doc. No. 1.)  In his Complaint, Bobnar alleges six counts against AstraZeneca: Count One, religious discrimination/failure to accommodate in violation of Ohio law and Title VII; Count Two, religious discrimination/retaliation in violation of Ohio law and Title VII; Count Three, violations of the Americans with Disabilities Act ("ADA"); Count Four FMLA interference; and Counts Five and Six, breach of contract and/or failure to pay wages in violation of Ohio law.  (*Id.* at ¶¶ 51-92.)

AstraZeneca filed the instant Motion for Partial Dismissal of Plaintiff's Complaint on February 24, 2023.  (Doc. No. 11.)  AstraZeneca seeks to dismiss Count Three, Bobnar's ADA claim. (*Id.*)  Bobnar filed his Opposition to AstraZeneca's Motion on March 10, 2023, to which AstraZeneca replied on March 24, 2023.  (Doc. Nos. 15, 19.)  Thus, AstraZeneca's Motion is ripe for a decision.

## II.  Standard of Review

AstraZeneca moves to dismiss Count Three of Bobnar's Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (*See* Doc. No. 11.)  Under Rule 12(b)(6), the Court accepts Bobnar's factual allegations as true and construes the Complaint in the light most favorable to Bobnar.  *See Gunasekara v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).  To survive a

---

his Complaint and also attached the form as an exhibit to his Opposition.  (Doc. No. 1, ¶¶ 26-29, 33; *see also* Doc. No. 15-1.)  Thus, both parties agree the form is central to the claims contained in Bobnar's Complaint.  Accordingly, the Court will consider the form in ruling on the instant Motion.

motion to dismiss under this Rule, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'"  *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).

The measure of a Rule 12(b)(6) challenge—whether the Complaint raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'"  *Bassett v. Nat. Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555-56).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."'"  *Gunasekera*, 551 F.3d at 466 (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).  Nonetheless, while "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 679.

4

### III.    Analysis

In Count Three, Bobnar alleges that AstraZeneca's "inquiries into Plaintiff's COVID-19 vaccination status as well as his past medical history respecting other vaccines and medications [were] prohibited medical inquir[ies] and neither job related or consistent with business necessity." (Doc. No. 1, ¶ 77.)  Bobnar alleges that the ADA prohibits such medical inquiries unless they are shown to be job-related and consistent with business necessity.  (*Id.* at ¶ 76.)  Thus, according to Bobnar, AstraZeneca violated the ADA by posing unlawful medical inquiries on its accommodation request form that were not job-related or consistent with business necessity.  (*Id.*) at ¶ 78.)

AstraZeneca argues that Count Three should be dismissed because, per the EEOC's guidance on COVID-19 vaccination inquiries, Bobnar was not subjected to an unlawful medical inquiry when it asked about Bobnar's COVID-19 vaccine status and whether Bobnar had received other vaccines in the past.  (Doc. No. 11-1, PageID# 57-58.)  Further, AstraZeneca argues that even if its religious accommodation form had contained a disability-related inquiry, Bobnar's ADA claim nevertheless fails because its questions were job-related and consistent with business necessity due to AstraZeneca's need to mitigate the serious health and safety risks that COVID-19 posed to its employees and business operations.  (Doc. No. 11-1, PageID# 57-59.)

Bobnar opposes AstraZeneca's attempt to dismiss his Count Three.  (Doc. No. 15.)  Bobnar argues that AstraZeneca's inquiries as to previous vaccinations, other than the COVID-19 vaccine, are prohibited under the ADA.  (*Id.* at PageID# 92.)  Bobnar argues that there is no case law, statute, or EEOC guidance that allows an employer to inquire as to "prior use of medications or their immunization history with respect to vaccines that are not the COVID-19 vaccine."  (*Id.* at PageID# 93.)  Moreover, Bobnar argues, AstraZeneca's inquiries were not job-related or consistent with

5

business necessity because employers are only permitted to make such inquiries or require examinations "when there is a need to determine whether an employee is still able to perform the essential functions" of his job, not when there is a "compelling" or "important" need to the employer. (*Id.* at PageID# 94.)

The ADA provides that:

[a] covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.

42 U.S.C. § 12112(d)(4)(A). This subsection "protects all employees from medical inquiries, regardless of whether they have a qualifying disability." *Bates v. Dura Auto. Sys., Inc.*, 767 F.3d 566, 573-74 (6th Cir. 2014) (citing *Kroll v. White Lake Ambulance Auth.*, 691 F.3d 809, 813 n. 6 (6th Cir. 2012)).

AstraZeneca argues, and Bobnar does not dispute, that AstraZeneca's inquiry regarding vaccinations is not a "medical examination" as that term is understood within the context of the ADA. Thus, the question before the Court is whether AstraZeneca's question about vaccination history was an impermissible "medical inquiry."

The ADA does not prohibit all medical inquiries, "but only those 'as to whether such employee is an individual with a disability or as to the nature or severity of the disability.'" *Chancey v. BASF Corp.*, No. 3:22-cv-34, 2022 WL 18438375, at *4 (S.D. Tex. Dec. 29, 2022) (quoting *Conroy v. N.Y. State Dep't of Corr. Servs.*, 333 F.3d 88, 94 (2d Cir. 2003)). When faced with a question of ADA statutory interpretation, the Sixth Circuit looks to the EEOC's enforcement guidance as "very persuasive authority." *Kroll v. White Lake Ambulance Auth.*, 691 F.3d 809, 815 (6th Cir. 2012). The relevant EEOC guidance provides that a "disability-related inquiry" is "a question (or series of

6

questions) that is likely to elicit information about a disability."  EEOC, *Enforcement Guidance: Disability–Related Inquiries and Medical Examinations of Employees Under the Americans with Disabilities Act (ADA)* Part B.2 (July 27, 2000), 2000 WL 33407181, at *3 (hereinafter the "Enforcement Guidance").  The Enforcement Guidance provides the following examples of disability-related inquiries:

> • asking an employee whether s/he has (or ever had) a disability or how s/he became disabled or inquiring about the nature or severity of an employee's disability;
>
> • asking an employee to provide medical documentation regarding his/her disability;
> • asking an employee's co-worker, family member, doctor, or another person about an employee's disability;
>
> • asking about an employee's genetic information;
>
> • asking about an employee's prior workers' compensation history;
>
> • asking an employee whether s/he currently is taking any prescription drugs or medications, whether s/he has taken any such drugs or medications in the past, or monitoring an employee's taking of such drugs or medications; and,
>
> • asking an employee a broad question about his/her impairments that is likely to elicit information about a disability (e.g., What impairments do you have?).

*Id.*  According to the EEOC, examples of questions that are not likely to elicit information about a disability and, therefore are not prohibited under the ADA include asking generally about an employee's well-being, asking an employee about nondisability-related impairments (e.g., asking an employee how he broke his leg), and asking an employee whether he can perform job functions, among other questions.  *Id.*

Additionally, the EEOC published a series of Technical Assistance Questions and Answers throughout the COVID-19 pandemic entitled "What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws."  EEOC, *What You should Know About COVID-*

7

*19 and the ADA, the Rehabilitation Act, and Other EEO Laws* (updated July 12, 2022), *available at https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws* (last accessed May 9, 2023) (hereinafter "EEOC COVID-19 Guidance").  Therein, the EEOC advised as follows with respect to inquiries about vaccination status:

> **K.9.  Does the ADA prevent an employer from inquiring about or requesting documentation or other confirmation that an employee obtained a COVID-19 vaccination?**  *(Updated 10/13/21)*
>
> No.  When an employer asks employees whether they obtained a COVID-19 vaccination, the employer is not asking the employee a question that is likely to disclose the existence of a disability; there are many reasons an employee may not show documentation or other confirmation of vaccination besides having a disability.  Therefore, requesting documentation or other confirmation of vaccination is not a disability-related inquiry under the ADA, and the ADA's rules about making such inquiries do not apply. . . .

*Id.*

For the following reasons, the Court concludes that AstraZeneca's inquiries into Bobnar's vaccination history were not prohibited medical inquiries under the ADA.  First, the Court notes that Bobnar alleges in his Complaint that AstraZeneca violated the ADA by impermissibly inquiring about his COVID-19 vaccination status (*see* Doc. No. 1, ¶ 77), but concedes in his Opposition that an employer's inquiry as to an employee's COVID-19 vaccination status does not violate the ADA's prohibition on medical inquiries.  (Doc. No. 15, PageID# 93.)  The EEOC expressly advised that an employer's COVID-19 vaccination status is not a prohibited medical inquiry under the ADA.  EEOC COVID-19 Guidance, Part K.9; *see also, e.g., Chancey*, 2022 WL 18438375, *4 ("Simply put, Chancey's amended complaint fails to identify any action allegedly taken by BASF that constitutes a disability-related inquiry or medical examination. Indeed, everything BASF is alleged to have done is expressly authorized by the EEOC."); *Sharikov v. Philips Med. Sys. MR Inc.*, No. 1:22-cv-00326,

2023 WL 2390360, at *15 (N.D.N.Y. Mar. 7, 2023); *Balow v. Olmsted Med. Ctr.*, No. 22-1668, 2023 WL 2776028, at *6 (D. Minn. Apr. 4, 2023).  Thus, to the extent that Bobnar alleges in his Complaint that AstraZeneca violated the ADA by inquiring about his COVID-19 vaccination status, Bobnar fails to state a claim.

The Court now turns to the other part of Count Three, whether AstraZeneca violated the ADA by asking on its religious exemption form: "For example, have you received other vaccines in the past?"  The Court concludes this question is not a prohibited medical inquiry under the ADA because it is not likely to elicit information about a disability.  *See Enforcement Guidance*, 2000 WL 33407181 at *3.  The text of the ADA does not specify whether inquiries about vaccinations are prohibited.  *See* § 12112(d)(4)(A).  Moreover, the Enforcement Guidance does not indicate whether asking vaccines is a prohibited medical inquiry.  However, the EEOC's COVID-19 guidance provides that inquiring about COVID-19 vaccination status does not violate the ADA because such an inquiry is unlikely to disclose the existence of a disability.  *See* EEOC, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, Part K.9 (Oct. 13, 2021).  The Court concludes that the EEOC's rationale is applicable to inquiries regarding vaccinations other than for COVID-19, which are generally available and not used to treat specific medical conditions.  *Kroll*, 691 F.3d at 815.  As the EEOC advised—and the instant case illustrates—there are many reasons an employee may not be vaccinated that are unrelated to the employee's medical and/or disability status.  EEOC, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, Part K.9 (Oct. 13, 2021).  A "yes" or "no" answer to AstraZeneca's question is unlikely to reveal the existence of any disability because vaccines are generally available and may be declined for myriad non-medical reasons.  *See also, e.g., Balow*, 2023 WL 2776028, at *6 (concluding that the plaintiff

9

failed to state a claim that the defendant-employer's vaccination mandate was a prohibited medical inquiry because "a vaccine . . . is not an inquiry into whether Plaintiffs have a disability.").

Bobnar argues that the EEOC's COVID-19 guidance should be narrowly construed to only allow employers to inquire as to COVID-19 vaccination history, but no other vaccination history. The Court rejects this argument.  Bobnar's argument ignores the underlying rationale for the EEOC's guidance, that questions about vaccine history are unlikely to elicit information about the existence of a disability because there is no correlation between either receipt or refusal of a vaccine and having a disability.  Vaccines are made broadly available to the public and may be received or refused for a variety of reasons, many of which are non-medical in nature.  Further, the EEOC broadly advises that "there are many reasons an employee may not show documentation or other confirmation of **vaccination** besides having a disability" and concludes that "requesting documentation or other confirmation of **vaccination** is not a disability-related inquiry under the ADA, and the ADA's rules about making such inquiries do not apply."  EEOC, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, Part K.9 (Oct. 13, 2021) (emphasis added). On its face, this language is broader and does not limit "confirmation of vaccination" to only confirmation of a **COVID-19** vaccination.

The Court is also not persuaded by Bobnar's argument that AstraZeneca made a prohibited disability-related inquiry because a vaccine is a "drug" and the ADA provides that asking an employee about whether he is currently taking any prescription drugs or medications is a prohibited disability-related inquiry.  (Doc. No. 15, PageID# 93-94.)  The Enforcement Guidance expressly provides that asking about an employee's current use of "**prescription** drugs or medications"—i.e., drugs that are prescribed to a specific patient to treat a specific medical condition—is prohibited.

*Enforcement Guidance*, 2000 WL 33407181 at *3 (emphasis added).  A prescription drug differs from a vaccine because prescription drugs are prescribed by an individual's medical provider to treat a specific underlying medical condition and/or disability.  If an employer inquired about an employee's prescription drug usage, the employer could extrapolate upon that information and likely deduce the precise nature of the employee's medical condition, which may reveal the existence of a disability.  Conversely, vaccines are not prescribed to treat specific existing medical conditions, but to prevent the general public from contracting certain diseases.  As discussed above, there are "many reasons" an employee may or may not be vaccinated besides having a disability.  *See supra*; *see also* EEOC, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, Part K.9 (Oct. 13, 2021).

Finally, the Court rejects Bobnar's assertion that AstraZeneca "wrongfully treated [his] request for a religious accommodation as a request for a reasonable accommodation under the ADA." (Doc. No. 15, PageID# 90.)  Bobnar's argument on this point is somewhat confusing.  Bobnar claims that AstraZeneca's "medical inquiry . . . was improper because [Bobnar] never requested an accommodation under the ADA."  (*Id.* at PageID# 91.)  He further asserts that he could perform the essential functions of his job at all times, and that he did not pose a direct threat to himself or others. (*Id.* at PageID# 91-92.)  However, there is no indication that AstraZeneca considered Bobnar to be disabled or interpreted Bobnar's request for a religious accommodation to be a request for a reasonable accommodation based on disability.  Indeed, AstraZeneca provided Bobnar with an exemption form clearly labeled "Religious Reasonable Accommodation Form," which Bobnar attached to his Opposition.  (*See* Doc. No. 15-1, "Religious Reasonable Accommodation Request Form.")  Bobnar's citation to various authorities on reasonable accommodations under the ADA is

inapposite.  Furthermore, the ADA protects all employees, irrespective of disability, from employers' prohibited medical inquiries.  § 12112(d)(4)(A).  Even if AstraZeneca's inquiry was a prohibited medical inquiry (and it is not), it does not mean that, by asking about Bobnar's vaccination history, AstraZeneca considered Bobnar disabled.  *See, e.g., Roe v. Cheyenne Mountain Resort*, 124 F.3d 1221, 1228-29 (10th Cir. 1997) (plaintiff had standing under the ADA to challenge her employer's requirement that all employees disclose all prescription drug usage because § 12112(d)(4)(A) applies to all employees and "does not require her to prove that she is an individual with a disability").

Accordingly, the Court concludes that AstraZeneca's inquiry about Bobnar's previous vaccination history was not a prohibited medical inquiry under the ADA.  Because AstraZeneca's question about Bobnar's vaccination history was not a prohibited medical inquiry, the Court need not address AstraZeneca's alternative argument that the inquiry was job-related and consistent with business necessity.  Bobnar's Count Three fails as a matter of law.

## IV.  Conclusion

For the reasons set forth above, Defendant's Partial Motion to Dismiss (Doc. No. 11) is GRANTED.

**IT IS SO ORDERED.**

   *s/Pamela A. Barker*
   PAMELA A. BARKER
Date:  May 9, 2023                    U. S. DISTRICT JUDGE

12