## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **JONATHAN BOBNAR,** | **CASE NO. 1:22-cv-02258-PAB** |
| **Plaintiff,** | **JUDGE PAMELA A. BARKER** |
| **v.** | |
| **ASTRAZENECA PHARMACEUTICALS LP,** | |
| **Defendant.** | |

---

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY AS TO COUNTS ONE AND FIVE

---

Christopher A. Holecek (0040840)
THRASHER, DINSMORE & DOLAN
1282 West 58th Street
Cleveland, Ohio 44102
T: 216.255.5431 | F: 216.255.5450
E: cholecek@tddlaw.com
And
Angela M. Lavin (0069604)
WEGMAN HESSLER & VALORE
6055 Rockside Woods Boulevard, Suite 200
Cleveland, Ohio 44131
T: 216.642.3342 | F: 216.642.8826
E: amlavin@wegmanlaw.com
*Attorneys for Plaintiff, Jonathan Bobnar*

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................1

STATEMENT OF UNDISPUTED FACTS ........................................................................2

    A.      Defendant's Religious Accommodation Process. ....................................... 2

    B.      The Denial of Bobnar's Religious Accommodation Request. ................... 5

    C.      Defendant's Religious Accommodation Process. ....................................... 6

    D.      AstraZeneca Admits Bobnar's Religious Exemption Was Based Entirely On Sincerely Held Religious Beliefs ............................................................. 9

    E.      Allowing Bobnar To Continue Weekly Covid Testing For Another Seven Months Did Not Pose An Undue Hardship. ............................................. 11

II.     LAW AND ARGUMENT ................................................................................12

    1.      Bobnar's Failure To Accommodate Claim. ..............................................12

        i. AstraZeneca Acknowledges That Bobnar Holds A Sincere Religious Belief. .................... 13

        ii. It Is Undisputed Bobnar Informed AstraZeneca About The Conflict Between His Sincerely Held Religious Beliefs And The Vaccine Requirement. ............................ 16

        iii.It Is Undisputed Bobar Was Fired Because He Refused To Comply With The Vaccine Requirement. ........................................................................ 17

        iv.Allowing Bobnar To Simply Continue Weekly COVID-19 PCR Testing Would Have Not Imposed An Undue Hardship On AstraZeneca As A Matter Of Law. .................... 17

    2.      Bobnar Is Entitled to Judgment As A Matter Of Law On His Breach Of Contract Claim.. 19

III.    CONCLUSION ................................................................................................20

CERTIFICATE OF COMPLIANCE ...............................................................................21

CERTIFICATE OF SERVICE .........................................................................................21

i

## TABLE OF AUTHORITIES

*Blackwell v. Lehigh Valley Health Network*, No. 5:22-cv-03360, 2023 U.S. Dist. LEXIS 10747, 2023 WL 362392, at *8 (E.D. Pa. Jan. 23, 2023) ................................................................... 15

*Davis v. Ford Bend Cnty.*, 765 F 3d 480, 465 (5th Cir. 2014) ...................................................... 7

*Devore v. Univ. of Ky. Bd. of Trs.*, No. 5:22-cv-00186, 2023 U.S. Dist. LEXIS 167239, 2023 WL 6150773, at *4 (E.D. Ky. Sept 20, 2023) ................................................................................. 15

*Groff v. DeJoy*, 600 U.S. 447, 454, 143 S. Ct. 2279, 216 L. Ed. 2d 1041 (2023) ............ 13, 14, 17

*Nat'l Fed'n of Indep. Bus v DOL, OSHA*, 142 S.Ct. 661, L. Ed. 2d 448, 2022 U.S. LEXIS 496 (2022) ................................................................................................................................. 1

*Natl. City Bank of Cleveland v. Erskine & Sons*, 158 Ohio St. 450, 110 N.E.2d 598 (1953) ...... 19

*Phillips v Spitzer Chevrolet Co.* 5th Dist. No. 2006 CA 00002, 2006-Ohio-4701 ....................... 19

*Prida v. Option Care Enters.*, (N.D. Ohio) (Oct. 24, 2023) US District LEXIS 190298 ....... 12, 15

*Sambrano v. United Airlines, Inc.*, 45 F. 4th 877 (5th Cir. 2022) .................................................. 11

*Thomas v. Rev. Bd. of Ind. Emp. Sec. Div., 450 U.S. 707, 716 (1981)* ......................................... 13

*United States Navy Seals 1-26 v. Biden* (N.D. Texas 2022), 578 F. Supp. 3d 822, 827-828 ....... 14

*United States v. Seeger*, 380 U.S. 163, 85 S. Ct. 850 L. Ed. 2d 733 (1965) ................................. 14

*Welsh v. United States*, 398 U.S. 333, 90 S. Ct. 1792 26 L. Ed. 2d 308 (1970) .......................... 14

## I.       **INTRODUCTION**

Plaintiff Jonathan Bobnar ("Bobnar" or "Plaintiff") was employed by Defendant AstraZeneca Pharmaceuticals, LP ("AstraZeneca" or "Defendant") as a Biologic Sales Specialist. He was terminated on April 29, 2022, because he refused to get a COVID-19 vaccine due to his sincerely held religious beliefs that prohibit him from injecting or consuming any substances that could alter his body.

On January 31, 2022, AstraZeneca announced it was requiring all its employees to be vaccinated against COVID-19 as a condition of employment.  The timing of this announcement was curious because it was two weeks after the United States Supreme Court, in *Nat'l Fed'n of Indep. Bus v DOL, OSHA*, 142 S.Ct. 661, L. Ed. 2d 448, 2022 U.S. LEXIS 496 (2022), stayed the enforcement of the OSHA vaccine mandate for large employers. And several months after, Director Dr. Rochelle Walensky of US Centers For Disease Control and Prevention acknowledged the COVID-19 vaccine does not prevent transmission of the virus. (*See* https://www.cnn.com/2021/08/05/health/us-coronavirus-thursday/index.html)

At the time AstraZeneca announced its vaccine mandate, 92% of its United States workforce of 15,000 employees were fully or partially vaccinated against COVID-19. Beginning in July 2021, AstraZeneca required all employees to advise the company of its vaccine status. Approximately 800 or 8% of the U.S. workforce were unvaccinated, including Bobnar. As a result, in July 2021, all  unvaccinated employees, including Bobnar, were required to perform weekly COVID-19 PCR testing.

On February 15, 2022, AstraZeneca provided information to its employees on how to request an accommodation from the vaccine requirement. The announcement explained that employees could request exemptions based on medical needs, religious reasons, or under applicable state law.

1

Notably, the primary accommodation was to simply continue with the weekly COVID-19 PCR testing implemented several months earlier.

Of the approximately 800 employees who were unvaccinated at the time Defendant announced its vaccine requirement, 72 were denied the opportunity to continue weekly testing and were terminated for refusing to receive the vaccine. Unlike Bobnar, most employees denied an exemption eventually received the vaccine rather than be fired.  And of the 72 employees who were terminated, 20 were in field sales roles.  Field employees, like Bobnar, did not work in an office and had limited physical contact with other employees.

Andrew Nichols, AstraZeneca's Head of People Services, claims he was AstraZeneca's "final" decision-maker regarding who was approved or denied requests for exemption from the AstraZeneca vaccine requirement.  In other words, Nichols decided which unvaccinated employees were allowed to continue weekly PCR testing as an accommodation and which would be required to take the vaccine or face termination.

## STATEMENT OF UNDISPUTED FACTS[1]

### A.    Defendant's Religious Accommodation Process.

Defendant's accommodation process began on February 28, 2022, with AstraZeneca sending employees a "Religious Accommodation Request Form." That form consisted of five questions concerning the nature of the employee's objection to the vaccine requirement, the duration the employee held his/her religious beliefs underlying the objection, an explanation how receiving the COVID-19 vaccine impacts other areas of the employee's life and whether the employee had ever sought a prior religious accommodation. (Nichols Depo. Tr. p. 18, Ex. A).

---

[1] The facts in support of this motion are derived primarily from the depositions of Defendant's current employees, Andrew Nichols and Joshua Wood and former employee, Andrea Criddle, pertinent portions of the depositions are attached hereto as **Exhibits A, B, and C,** respectively.

Bobnar timely submitted his religious exemption request and provided detailed information in response to each of the five questions in support of his request for religious accommodation. (Nichols Depo. Tr. p. 18, Ex. A).  Specifically, Bobnar advised AstraZeneca that:

- He has been a non-denominational follower of Jesus Christ most of his life;

- He is an active member of his Church and engages in small group Bible studies and mentors high school students;

- He believes his body is a temple of the Holy Spirit (1 Cor.6:19-2), and cannot alter his body without obtaining permission from the Holy Spirit;

- He received conviction from the Holy Spirit to abstain from the COVID-19 vaccine;

- He believes that taking the COVID-19 vaccine after receiving this spiritual conviction  "would be dishonoring and sinful to God"; and

- He provided detailed scriptural support for his position. (See, Nichols Dep. Tr.  p. 18.  Ex. A).

Nichols testified that the accommodation process included, when necessary, sending an employee  "tailored follow-up questions" based on the information provided by the employee "in the initial request form".  (Nichols Depo. Tr. p. 115).  In Bobnar's case, Nichols sent him a follow-up question that implied Bobnar's objection was based on a belief the vaccine was a "harmful substance". (See, Nichols Dep. Tr. p. 54, Ex. B). But Nichols admits Bobnar never characterized the vaccine as "harmful". (Nichols Dep. Tr. p. 47, 62). Nichols also sent this same boilerplate follow-up question to other employees, including Bobnar's father-in-law, Robert Hartline, who also sought an accommodation. (Nichols Dep. Tr. pp 110,112 and Ex. F).

3

Specifically, on March 17, 2022, Nichols requested Bobnar to "confirm" why if he believes his "body is a temple" and is "prohibited from putting harmful substances into [his] body" whether he smokes, drinks alcohol has tattoos, or takes drugs:

> "Your request mentions that you cannot get vaccinated because of your beliefs that your body is a Temple and that you are prohibited from putting harmful substances in your body.  To help us understand your religious beliefs better can you confirm whether, for the period while you have held these religious beliefs, you have smoked **cigarettes, consumed alcohol, received any tattoos, or used any legal recreational drugs?**"  If yes, please describe why these activities do not violate your religious beliefs that your body should not be subject to anything that may harm it".  (Nichols Depo. Tr., p. 54,60, Exhibit B.)(emphasis added.)

Nichols explained he needed additional information to better "understand more the life and lifestyle preventing" him from receiving the COVID-19 vaccine. (Nichols Dep. Tr. p. 47).

Bobnar responded to the supplemental question and advised AstraZeneca that his religious objection was much broader than the COVID-19 vaccine, writing, in part, that:

> As a result of [being] a follower of Jesus Christ led by the Holy Spirit there are many things **I abstain from in my life, including but not limited to the ones mentioned in the question above**. (See, Nichols Dep. Ex. B.) (emphasis added.)

Thus,  Bobnar informed Nichols that his sincerely held Christian beliefs control all aspects of his life, including what he puts into and onto his body. He provided Nichols specific information concerning his religious beliefs, the duration he has held these beliefs, the scriptural support for his beliefs, and his belief that one's body is a "sacred temple of the Holy Spirit" means he also had *abstained* from putting  other substances into (and onto) his body,  including:

- cigarettes;
- alcohol;
- drugs, legal or otherwise; or

      •   placing tattoos on his body.[2]

(See, Nichols Depo. Tr., p. 54, 190 Exhibit B).

     In short, Bobnar made clear that because of these sincerely held religious beliefs, compliance with the vaccine requirement created a spiritual conflict: taking the vaccine (to retain his job) meant he would be forced to engage in conduct that Bobnar characterized as "dishonoring and sinful to God". (Nichols Dep. Ex. B).  He explained that as a Christian, he believes that "Satan tempts us, and God uniquely gives us conviction and tests our hearts". (Nichols. Dep. Exh B).

### B.     The Denial of Bobnar's Religious Accommodation Request.

     Nichols testified that he considered only this information Bobnar provided. (Nichols Dep. Tr. p. 190).  Notably, neither Bobnar's manager, Joshua Wood, nor Nichols ever doubted the sincerity of Bobnar's religious beliefs. (Wood Dep. Tr. p. 54, Nichols Dep. Tr. p 65-66). Wood even told Bobnar that he fully supported his request for a religious accommodation. (Wood Dep. Tr. p. 72).

     Yet, on March 31, 2022, without ever meeting or even talking to Bobnar, Nichols and his "HR team" sent a boilerplate email to Bobnar advising him that his religious accommodation request was denied.  (Nichols Depo. Tr. pp. 70, 74, Exhibit C).  The same boilerplate email was sent at the exact same time to every other AstraZeneca employee who was denied an accommodation from the COVID-19 vaccine requirement.  (Nichols Depo. Tr. p. 71). In answers to interrogatories, Defendant divulged, for the first time, that Bobnar "failed to demonstrate he possessed a sincerely held religious belief that *conflicted* with the vaccine requirement". (Nichols Dep. Tr. p. 94, Ex. D) (Emphasis added).

---

[2] At deposition, Bobnar elaborated even further advising AstraZeneca that his wife, for instance, delivered their babies naturally without medication and that Bobnar and his family generally abstain from other vaccines and medications.

After learning he was not going to be permitted to continue weekly COVID-19 testing, Bobnar was told that he could keep his job if he changed his mind and submitted proof of having received the COVID-19 vaccine.  (Nichols Depo. Tr., pp. 85-86, Ex. C).  Bobnar was also instructed that if he did not submit proof of vaccination by April 22, 2022, his employment would be terminated on April 29, 2022, for cause.  (Nichols Depo. Tr., pp. 85-86, Ex. C).

At the time he was fired, Bobnar, who was earning a six-figure salary, bonus eligibility, had a company car, medical benefits, profit sharing, 401K, stock options, and he fully supported his wife and two infants with no other job.  Curiously, just 17 days after Bobnar was fired Defendant announced that it would begin phasing out the PCR testing requirement and replacing it with antigen testing. (Nichols Depo. Tr., p. 187, Criddle Dep. Tr. p. 68 ). Antigen testing was described as "easier" and "more convenient." (Wood Dep. Tr. p. 68). On January 5, 2023, Defendant discontinued antigen testing and all employees granted accommodation have worked without any restrictions. (Wood Dep. Tr. pp. 70-71, Ex. I).  Thus, instead of allowing Bobnar to continue weekly COVID testing for another seven months, Defendant fired him instead.

### C.    Defendant's Religious Accommodation Process.

Defendant's religious accommodation process in denying or granting an accommodation is also curious, in that Nichols testified that there was no note taking, no employee interviews and no formal deliberative process. (Nichol Dep. Tr. p. 57-58, 73-76).  For instance, Bobnar and his manager, Joshua Wood, both worked as field salesmen and met with generally the same customers. (Wood Dep. Tr. p.14). Both employees were unvaccinated against COVID-19 and had been doing required weekly COVID PCR testing since July 2021. (Wood Dep. Tr. p. 30).  Both worked remotely. (Wood Dep. Tr. p. 69). Both sought a religious exemption from the vaccine requirements. (Wood Dep. Tr. p. 36, Ex. C).

6

A few days before the religious exemption requests were to be submitted, Wood complained to Bobnar in a text message "I am so screwed on this exemption submission". (Wood Depo. Tr., 50, Ex. D). Wood preferred obtaining medical accommodation but felt that process would be futile. (Wood Dep. Tr.p.52). After discussing his dilemma with Bobnar, Bobnar sent Wood his religious exemption request form along with his responses to each of the questions with scriptural passages. (Wood Dep. Tr. p. 53, 55.Ex. D). Unlike Bobnar, Wood had no intention of losing his job and decided, in advance, he was going to get vaccinated if his religious accommodation was denied. (Wood Dep. Tr. p. 59).

Unsurprisingly, the information Wood provided AstraZeneca in support of his request for a religious exemption was substantially like the information Bobnar provided. (Wood Dep. p. 36, Ex C).

|  | **Joshua Wood** | **Jonathan Bobnar** |
|---|---|---|
| Religion | Non-Denominational Christian | Non-Denominational Christian |
| Nature of Objection | Body is a sacred temple of the Holy Spirit | Body is a sacred temple of the Holy Spirit |
| Duration held this Belief: | Since childhood | Since childhood |
| Scripture Support: | 1 Corinthians 6:19-20 | 1 Corinthians 6:19-20 |
| Impact on Lifestyle: | Abstains from drugs, nicotine, alcohol, tattoos/piercings. | Abstains from drugs, nicotine, alcohol, tattoos/piercings. |

Nichols, however, approved Woods' religious exemption while denying Bobnar's request. (Nichols Dep. Tr. p. 58, Ex. E). When pressed to explain why he granted Wood's religious exemption request while denying Bobnar's, Nichols testified he felt Wood provided "much more context of how this person's [Wood] life is lived" (Nichols Dep Tr pp. 159-160 ).[3] Nichols pointed

---

[3] Nichols's testimony illustrates why courts warn that employer's need to use a "light touch" when evaluating the sincerity of a religious belief. *Davis v. Ford Bend Cnty*., 765 F 3d 480, 465 (5th Cir. 2014).

out that Wood's request "aligns with his religious beliefs" because he also refrains from alcohol, cigarettes, recreational drugs. (Nichols Depo. Tr., pp. 159-160, See, Wood Dep. Ex. C).

But Bobnar also provided the same information to Nichols. He explained his Christian belief, that based on scripture (1 Corinthians 6:19-20, among others), he believes that one's body is a temple of the Holy Spirit and, therefore, consistent  with his lifestyle, Bobnar has received spiritual conviction from the Holy Spirit:

- To abstain from cigarettes;

- To abstain from alcohol;

- To abstain from drugs, recreational or otherwise; and

- To abstain from tattoos or body piercings.

Nichols testified that he read all the materials supplied by Bobnar, including the above information, and yet still denied Bobar's request to continue weekly COVID-19 testing. (Nichols Dep Tr. pp. 190-191).

Additionally, Nichols sent Robert Hartline the exact email approving his accommodation request, on the exact same date, March 31, 2022, at the exact same time, 1:40 p.m. that Wood received the email approving his religious accommodation. (Nichols Depo. Tr. p. 129, Exhibit G). Notably, Hartline, who is also Bobnar's father-in-law, attended the same church as Bobnar and offered the same religious-based reason for seeking accommodation. Specifically, Hartline advised AstraZeneca that:

> "Guidance of the Holy Spirit on a daily basis through prayer and reading God's Word.  The mandate to comply to this injection is unique and that I am asked to comply with a mandate that is against my sincerely held religious beliefs, that I am guided by the Holy Spirit who has given me peace in the decision to abstain from the directive." (Nichols Depo. Tr., p 105, Exhibit E).

Yet, unlike Bobnar, Hartline's accommodation request was approved, and he was permitted to *continue* the weekly COVID-19 PCR testing. (See, Nichols Dep. Tr. Ex. G).  Later, on April 11, 2022, Hartline was notified he was also granted an exemption for medical reasons. (Nichols Dep. Tr. p 140, Exh. H). Nichols testified that he personally reviewed all 800 or so vaccine accommodation requests. (Nichols Depo. Tr. p. 166, Exhibit J, ¶18). He claims no one took any notes during this entire process.  (Nichols Dep. p. 21).

But when confronted at deposition why he also approved Hartline's religious accommodation while denying the one for Bobnar who had the same religious conflict, Nichols testified the March 31, 2022, email approving Hartline's exemption was a mistake. (Nichols Depo. Tr. p. 146).

**D.**     **AstraZeneca Admits Bobnar's Religious Exemption Was Based Entirely On Sincerely Held Religious Beliefs**

Nichols does not question the sincerity of Bobnar's religious beliefs. (Nichols Depo. Tr., p. 100).  Further, Nichols acknowledges that nothing in Bobnar's religious exemption request suggested he opposed the COVID-19 vaccine for non-religious reasons. (Nichols Dep. Tr. pp. 65-66). Indeed, Nichols  admits Bobnar:

- Never questioned the safety of the vaccine;

- Never questioned the efficacy of the vaccine;

- Never claimed  the vaccine was experimental; and

- Never opposed the vaccine requirement for medical, philosophical, sociological, or political reasons.(Nichols Depo. Tr. pp 45-46).

When asked to explain why Bobnar was fired instead of being permitted to continue weekly COVID-19 PCR testing Nichols provided the following answer:

9

I don't doubt the sincerity of the answers. What—what did not come across was what specific religious tenets or beliefs were being referenced. So, again I think what I said before was there were a number of statements, a number of references, a number of Bible verses. **In our view that did not translate into an actual religious belief or tenet that actually prevented vaccination against COVID**. (Nichols Dep. Tr. p 100).

But Bobnar provided Nichols with his specific religious belief—that he must honor his body because it is a "temple of the Holy Spirit". (Nichols Dep Ex. A). He provided how the company's vaccine requirement conflicted with his beliefs-- he received conviction from the Holy Spirit to abstain from the vaccine. He advised Nichols of the consequences of defying the Holy Spirit—it would be sinful and dishonoring God. He also provided broader context showing his objection was not limited to just the COVID-19 vaccine and that the Holy Spirit had previously convicted him to abstain from putting other substances into his body, such as nicotine, alcohol and drugs. (Nichols Dep. Ex. B).  Indeed, Bobnar provided the same religious beliefs and how it conflicted with the company's vaccine requirement that Nichols deemed was sufficient for allowing Wood to continue weekly COVID-19 testing.

Yet Nichols suggests he did not understand why Bobnar's sincerely held religious beliefs prevented him from receiving the vaccine:

> Q:  Do you see any conflict between my client's answer to that question and
>      AstraZeneca's COVID-19 vaccine requirement?
>                Counsel: Objection to the form.
> A:  Can you explain?
> Q:  Well, you were looking for a conflict, were you not?
> A:  I wasn't looking for a conflict.
> Q:  Oh you weren't?
> A:  No.
> What was the purpose of that question?
> A:  T---to understand.
> Q:  Just to understand?
> A:  To understand and to—to have more context.

(Nichols Depo. Tr. pp 37-39).  In Defendant's responses to Interrogatory Number 5, Defendant stated Bobnar was denied accommodation because no such conflict existed. (Nichols Depo. Tr. p. 91, Ex. D).

In any event, it is undisputed that Bobnar provided Nichols with substantial context. He explained his religious beliefs and responded to a follow-up question asking whether he also manifested his religious beliefs by refraining from cigarettes, alcohol, legal recreational drugs, or tattoos. (Nichols Dep. Ex. B). In other words, Bobnar's exemption request was predicated on the same sincerely held religious beliefs professed by Wood—who received a religious exemption—who, as indicated, prepared his exemption request only after first reviewing Bobnar's responses. (Wood Dep. Tr. pp. 52-54, Ex. D).

Given Bobnar's sincerely held religious beliefs, he had no choice but to refuse the vaccine because it was a choice between "dishonoring God" (and sinning) and keeping his job.  Bobnar, and each employee denied a religious accommodation had to answer the question posed by Judge Ho  in *Sambrano v. United Airlines, Inc.,* 45 F. 4th 877 (5th Cir. 2022): "How much money would it take for you to sell out your faith?" *Id*. p. 879.

**E.      Allowing Bobnar To Continue Weekly Covid Testing For Another Seven Months Did Not Pose An Undue Hardship.**

As indicated, AstraZeneca began tracking the vaccination status of all its employees since mid-2021. (Nichols Depo. Tr. pp.173-174).  None of Bobnar's customers ever complained that Bobnar was not vaccinated against COVID-19. (Nichols Dep. Tr. p.181; Criddle Dep. Tr. p. 28; and Wood Dep. Tr. p. 28).  In fact, there is no evidence that any of Bobnar's customers were even aware of his vaccine status. (Wood Depo. Tr pp. 32-33.,Ex A). Indeed, Defendant advised its employees they were not required to disclose their vaccine status to any customer. (Wood Dep. Tr. pp. 32-33, Ex. A).   Nichols further admits there is no evidence that AstraZeneca's unvaccinated

11

employees, including the field employees like Bobnar who worked primarily out of their homes, were transmitting the virus at a higher rate than its vaccinated employees.  (Nichols Depo. Tr., p. 180).  Nor is there any evidence Defendant lost sales or sales opportunities because of Bobnar's vaccine status. (Wood Dep. Tr. p. 35).

For his part, Bobnar worked from his home and would travel alone to meet with customers. (Wood Depo. Tr. p.19).  Bobnar would often attend coffee, lunch, and/or dinner presentations with customers.  (Wood Depo. Tr., pp. 21-22). Bobnar would have limited physical contact with other employees. (Wood Dep. Tr. p.18).

## II.     LAW AND ARGUMENT

### 1.  Bobnar's Failure To Accommodate Claim.

In Count One of the Complaint, Bobnar alleges that Defendant failed to offer him reasonable accommodation for his religious beliefs.  As indicated, the accommodation offered by AstraZeneca to any employee granted an exemption from the vaccine requirement was to simply *continue* weekly COVID-19 PCR testing, something Bobnar (and approximately 800 other unvaccinated AstraZeneca employees) had been doing happily since mid-2021. (Criddle Dep. Tr. p. 37).

To establish a prima facie case of religious discrimination by a failure to accommodate, requires evidence that (1) plaintiff holds a sincere religious belief that conflicts with an employment requirement, (2) plaintiff had informed the employer about the conflict, and (3) plaintiff was terminated because of the conflict requirement.  *Prida v. Option Care Enters.*, (N.D. Ohio) (Oct. 24, 2023) US District LEXIS 190298.  Once a prima facia case is established by the plaintiff, the burden shifts to the employer to demonstrate that accommodating the employee's

religious belief would impose an "undue hardship" on the employer. *Groff v. DeJoy*, 600 U.S. 447, 454, 143 S. Ct. 2279, 216 L. Ed. 2d 1041 (2023).

i. **AstraZeneca Acknowledges That Bobnar Holds A Sincere Religious Belief.**

As demonstrated above, there is no dispute regarding Bobnar's sincerely held religious beliefs. (Nichols Dep. Tr. p. 100; Wood Dep. Tr. p. 54). In fact, AstraZeneca acknowledges that Bobnar explained the nature of his objection to the COVID-19 vaccine requirement and that it was based on his reliance and guidance from the Holy Spirit and the Bible.  He advised Defendant that the Holy Spirit guided him not to take the vaccine.  He further advised AstraZeneca that he had been a born-again follower of Jesus Christ since his childhood, that he attends church on a regular basis, is active in leading small Bible study groups and that from the Bible he believes that his body is a Temple of the Holy Spirit.  He also explained to AstraZeneca that through prayer and discernment he had received conviction from the Holy Spirit not to take the vaccine and that the Holy Spirit had previously instructed him not place other substances into his body such as cigarettes, alcohol, drugs and many other substances. (Nichols Depo. Exhibit B).  The Equal Employment Opportunity Commission Guidance instructs employers to "proceed on the assumption that a request for a religious accommodation is based on sincerely held religious beliefs, practices or observances." (EEOC Technical Assistance Questions and Answers, L.2. - May 15, 2023.) It is settled that "courts are not arbiters of scriptural interpretations."  *Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 716 (1981). Nichols concedes Bobnar's religious beliefs are likely shared by millions of other Christians. (Nichols Depo. Tr. p. 103). Even Nichols admits "religion can mean different things to different people". (Nichols Dep. Tr. p. 41).

Title VII defines religion "broadly" to include "all aspects of religious observance and practice". 42 U.S.C. §2000(e)(j).  Moreover, religion is not limited to those practices specifically

endorsed by a recognized church. *Welsh v. United States*, 398 U.S. 333, 90 S. Ct. 1792 26 L. Ed. 2d 308 (1970). The function of either an employer or a court is not to assess the reasonableness of a professed belief but:

> To decide whether the beliefs professed are sincerely held and whether they are, in [the believer's] own scheme of things, religious. *United States v. Seeger*, 380 U.S. 163, 85 S. Ct. 850 L. Ed. 2d 733 (1965)

In the COVID-19 failure to accommodate vaccine cases, the religious objections generally fall into four categories that courts have generally recognized as sufficient:

> (1) opposition to abortion and the use of aborted fetal cell lines in development of the vaccine; (2) belief that modifying one's body is an afront to the Creator; (3) direct, divine instruction not to receive the vaccine; and (4) opposition to injecting trace [*828] amounts of animal cells into one's body.

*United States Navy Seals 1-26 v. Biden* (N.D. Texas 2022), 578 F. Supp. 3d 822, 827-828.

Here, Bobnar's religious beliefs fall into the second and third categories. He advised Defendant that as a Christian he believes what is stated in 1 Corinthians 6:19-20; namely that his body is a "sacred temple of the Holy Spirit" and that "after prayerful conviction and scriptural meditation, the Spirit of God has told me not to take the COVID vaccines". He further advised Defendant that his religious beliefs are consistent with the religious-based choices he made in the past-concerning the need to abstain from placing other substances into his body, such as alcohol, nicotine, and drugs. (Nichols Dep. Exs. A&B).

Moreover, Nichols admits Bobnar's objection to the vaccine requirement was not an attempt to disguise secular objections to the vaccine with generic religious statements. (Nichols Dep. Tr. pp.65-66). Recently, this court in *Prida v. Option Care Enters.* (N.D. Ohio Oct. 24, 2023) 2023 U.S. Dist. LEXIS 190298, 2023 WL 7003402 noted that an employer is justified in denying an accommodation request where an employee seeks a "blanket privilege" by using Title VII language to conceal a secular opposition to a COVID-19 vaccine requirement.

14

The *Prida* case is instructive regarding the application of the "blanket privilege" defense. There, the Plaintiff, a nurse, was granted a religious exemption from the employer's COVID-19 vaccine requirement.  The employer, however, required her to do COVID-19 testing in lieu of the vaccine.  But she refused, claiming without evidence, the chemicals in the testing kits were "harmful".  Judge Lioi found that the employee's objection to the testing was "essentially medical, political, sociological or philosophical in nature". In dismissing the complaint, Judge Lioi observed:

> While *Prida's* request for accommodation and later emails did use some religious language, including several quotes from the Bible, **these attempts to couch secular preferences amongst generic religious statements do not amount to a sincerely held religious belief.** As with the plaintiff in *Ulrich*, Prida's alleged religious belief that her body is "God's temple" would, if allowed, grant the plaintiff carte blanche to accept or reject nearly any condition of her employment. Accordingly, courts have routinely rejected failure to accommodate claims based on such "blanket assertions," finding that they present "isolated moral teachings" rather than sincerely held religious [*16]  beliefs. *Devore v. Univ. of Ky. Bd. of Trs.*, No. 5:22-cv-00186, 2023 U.S. Dist. LEXIS 167239, 2023 WL 6150773, at *4 (E.D. Ky. Sept 20, 2023) (holding that the plaintiffs belief that "she must be 'able to choose what shall or shall not happen' to her" was not protected); *Finkbeiner* 623 F. Supp. 3d at 465-66 (M.D. Pa. 2022) (holding that the plaintiff's belief that "she has a 'God given right to make [her] own choices' was not protected); *Blackwell v. Lehigh Valley Health Network*, No. 5:22-cv-03360, 2023 U.S. Dist. LEXIS 10747, 2023 WL 362392, at *8 (E.D. Pa. Jan. 23, 2023) (holding that a belief forbidding "insertion of an unwanted foreign objects into [the plaintiff's] body" was not protected).

*Prida,* 2023 U.S. Dist. LEXIS 190298, *15-16. (Emphasis added).

Clearly, employee opposition to an employer's COVID-19 vaccine requirement based on medical concerns or opposition motivated by political/philosophical/sociological views is not protected under Title VII. This is true even where, as in *Prida*,  the employee later attempts to couch his/her secular opposition to the vaccine with generic religious statements. Courts, correctly, understand that blanket assertions of that nature are not sincerely held religious beliefs protected under Title VII.

By contrast, Bobnar's request for religious accommodation was for purely religious reasons, a fact Defendant does not contest. (Nichols Dep. Tr. pp. 65-66, 100; Wood Dep. Tr. p. 54). His request was not due to any secular concerns, such as vaccine safety, vaccine efficacy, or medical, political, or philosophical views of any sort.  (Nichols Depo. Tr., pp. 29, 45-47). Defendant admits Bobnar's religious exemption was based entirely on his Christian faith. (Nichols Depo. Pp. 65-66, Ex. B).  His opposition to the vaccine was entirely consistent with his lifestyle where he received other spiritual convictions received from the Holy Spirit instructing him to abstain from putting other substances into his body such as cigarettes, alcohol and drugs.  (See, Nichols Depo. Ex. B).

Accordingly, Bobnar easily satisfies the first element of a prima facie case.

ii.    **It Is Undisputed Bobnar Informed AstraZeneca About The Conflict Between His Sincerely Held Religious Beliefs And The Vaccine Requirement.**

Second, it is undisputed that Bobnar timely notified AstraZeneca of his sincerely held religious beliefs and why he could not take the vaccine without sinning and dishonoring God. (Nichols Dep. Exs. A&B). Despite Defendant's Answer to Interrogatory Number 5 - that Bobnar was denied a religious accommodation because "he failed to demonstrate he had a sincerely held religious belief that *conflicted* with" the vaccine requirement -  Nichols testified that he was not even looking for such a conflict when he denied Bobnar's request. (Nichols Dep. Tr. pp.38-39, Ex. D). Nichols, instead, claims Bobnar was denied an exemption because he did not understand "the actual religious tenet belief that actually prevents [Bobnar] getting the COVID-19 vaccine". (Nichols Dep. Tr. p. 39). As Nichols explained:

> Q: Well, I mean, what is it you don't understand?  I mean he testified that if he disobeyed the conviction that he received from the Holy Spirit it would be sinful. Is that a concern that you-you took into account when you denied his request for a religious accommodation?
>     Counsel: Objection to form. You can answer.

16

A: I read and understood it.
Q: And did you take that concern  into account?
A: Yes.
(Nichols Dep. Tr. p. 44).

Accordingly, Bobnar easily satisfies the second prong of a prima facia case because he notified Defendant of a conflict between his sincerely held religious beliefs and the vaccine requirement. The fact Nichols deliberately disregarded Bobnar's religious conflict is not in dispute.

### iii.    It Is Undisputed Bobar Was Fired Because He Refused To Comply With The Vaccine Requirement.

Finally, it is undisputed Bobnar was fired, with cause, for refusing to take the vaccine because AstraZeneca's vaccine requirement conflicted with his sincerely held religious beliefs. (Nichols Depo. Tr. p.70. Criddle Dep. Tr. p. 66, Ex. M). Criddle was unable to explain why Nichols's decision regarding Bobnar's fate was final and unappealable. (Criddle Dep. Tr. p. 71).

### iv.    Allowing Bobnar To Simply Continue Weekly COVID-19 PCR Testing Would Have Not Imposed An Undue Hardship On AstraZeneca As A Matter Of Law.

Having demonstrated the existence of a prima facie case of religious discrimination for failing to accommodate Bobnar's religious objection to the vaccine requirement, the burden shifts to AstraZeneca to prove that allowing Bobnar to continue weekly COVID-19 testing for seven additional months - something he and 800 other employees had been doing for the previous ten months - would have imposed an undue hardship. *Groff v. DeJoy*, 600 U.S. 447 at 454. No such evidence exists. (See, Nichols Dep. Tr. Ex. D, Answer to Interrogatory No. 5).

As indicated, it is undisputed that all unvaccinated AstraZeneca employees, including Bobnar, had been engaging in weekly PCR testing since July 2021.  (Nichols Depo. Tr. p. 173; Criddle Dep. Tr. p. 24).  Those AstraZeneca employees granted religious accommodation were merely required to continue weekly COVID-19 PCR testing for 17 more days, then antigen testing until January 5, 2023.  (Criddle Dep. Tr. p. 68, Ex. P). Allowing Bobnar to continue weekly

COVID-19 testing for seven more months imposed no undue burden on anyone.  Nothing about Bobnar's job would have changed. (Wood Dep. Tr. p. 59).

For instance, Defendant is unable to make an undue hardship argument on the basis that allowing Bobnar to retain his job without being vaccinated would cause reputational harm to Defendant, a pharmaceutical  company.  Indeed, AstraZeneca admits that none of Bobnar's customers were aware (or would ever know) he was unvaccinated.  (Nichols Depo. Tr., p.181, Wood Dep. Tr. p. 31.)

Second, AstraZeneca admits that no sales were lost because Bobnar had been unvaccinated. (Wood Depo. Tr.p.35).  Wood testified that his day-to-day job functions remained unchanged after he was granted a religious exemption. (Wood Dep. Tr. p. 59).

Third, AstraZeneca acknowledges that there is no evidence that any of its unvaccinated employees were contracting or transmitting the COVID-19 virus at a higher rate than its vaccinated employees.  (Nichols Depo. Tr.p.180).

Finally, AstraZeneca concedes that no customer complained that the unvaccinated employees were transmitting the COVID-19 virus to others.    (Nichols Depo. Tr.p.181). Additionally, Bobnar did not work in an AstraZeneca office or near any other employee or other non-AstraZeneca employees.  (Wood Depo. Tr.pp.17-19.). When Bobnar would leave his home for sales visits (where he had his home office), he would typically drive to customer sites alone. (Wood Dep. Tr., p.18). Thus, no credible argument or evidence exists that denying Bobnar's religious exemption was needed to prevent any undue hardship for the company.

Accordingly, the undisputed facts demonstrate the existence of a prima facie case of religious discrimination based on Defendant's refusal to offer Bobnar reasonable accommodation of continuing weekly COVID-19 testing. Bobnar's objection was based on sincerely held religious

reasons that conflicted with the company's vaccine requirement. Moreover, it is undisputed that offering that accommodation to Bobnar would not have imposed any undue burden on the Defendant or anyone. Bobnar is therefore entitled to judgment as a matter of law on Count One of the Complaint, the amount of damages to be determined at trial.

### 2. Bobnar Is Entitled to Judgment As A Matter Of Law On His Breach Of Contract Claim.

In Count Five of the Complaint, Bobnar asserts a claim for breach of contract. This claim arises out of Defendant's refusal to pay Bobnar his first Quarter bonus for 2022. Under Defendant's Field Services Incentive Plan, the employee earns a bonus if employed when the quarter ends. (AstraZeneca Field Incentive Plan ("Plan"), amended January 31, 2021, AstraZeneca_ BOB_00001521-1538)[4]. Under Defendant's plan, the first incentive period in 2022 ended on March 31. (Wood Dep. Tr. p. 75).   Bobnar's boss, Joshua Wood, testified Bobnar was eligible for the Q1 bonus because his employment was terminated after March 31. (Wood Dep. Tr. p. 75). Defendant's former "People Services Lead" does not know the reason(s) Bobnar was not paid the Q1 Field Service Incentive Bonus. (Criddle Dep. Tr. p. 71).

To establish an actionable breach of contract claim requires the claimant to establish the existence of a contract, the failure without legal excuse of the other party to perform when performance is due, and damages or loss resulting from the breach. *Phillips v Spitzer Chevrolet Co.* 5th Dist. No. 2006 CA 00002, 2006-Ohio-4701, ¶ 17.  *See, also Natl. City Bank of Cleveland v. Erskine & Sons*, 158 Ohio St. 450, 110 N.E.2d 598 (1953), paragraph one of the syllabus.

In this instance, it is undisputed that Defendant's Plan obligated Defendant to pay Bobnar his Q1 bonus he earned before he was fired on April 29, 2022. It is undisputed that Bobnar worked through the entire first quarter and was eligible to the same bonus award paid to his colleagues.

---

[4] A copy of the AstraZeneca Field Incentive Plan is attached hereto as **Exhibit D**.

(Wood Dep. Tr. p. 75). Yet, Defendant is unable to explain why it failed to pay Bobnar that bonus. (Criddle Dep. Tr. p. 71).

Accordingly, Bobnar is entitled to judgment on Counts Five of the Complaint because it is undisputed Bobnar earned the Q1 2022 FSIP bonus and yet Defendant has refused, without legal justification, to pay Bobnar under the Plan, leaving the amount of damages to be determined at trial.

### III.      CONCLUSION

For the foregoing reasons Plaintiff submits that no genuine issue of material fact exists as to his entitled to judgment on Count One and Five and of the Complaint. The amount of damages remains  to be decided by the jury at the trial in this case.

Respectfully submitted,
*/s/ Christopher A. Holecek*

Christopher A. Holecek (0040840)
THRASHER, DINSMORE & DOLAN
1282 West 58th Street
Cleveland, Ohio 44102
T: 216.255.5431 | F: 216.255.5450
E: cholecek@tddlaw.com
And
Angela M. Lavin (0069604)
WEGMAN HESSLER & VALORE
6055 Rockside Woods Boulevard, Suite 200
Cleveland, Ohio 44131
E: amlavin@wegmanlaw.com
*Attorneys for Plaintiff, Jonathan Bobnar*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this case has been assigned a standard case track.  This Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment as to Liability as to Counts One, and Five complies with the twenty-page (20) limit allowed by the Court.

*/s/ Christopher A.  Holecek*
CHRISTOPHER A. HOLECEK (0040840)
*Attorney for Plaintiff, Jonathan Bobnar*

## CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2024, the foregoing was electronically filed.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.  A copy of the foregoing will also be sent to the parties by Regular U.S. Mail.

*/s/ Christopher A.  Holecek*
CHRISTOPHER A. HOLECEK (0040840)
*Attorney for Plaintiff, Jonathan Bobnar*